IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DAVID OLSEN                                      Case No. 3:15-cv-00703-MA

                    Plaintiff,                       OPINION AND ORDER

          v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                    Defendant.

BRUCE W. BREWER
P.O. Box 421
West Linn, OR 97068

          Attorney for Plaintiff

BILLY J. WILLIAMS
United States Attorney
District of Oregon
JANICE E. HEBERT
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902

LISA GOLDOFTAS
Social Security Administration
Office of the General Counsel
701 5th Avenue, Suite 2900
Seattle, WA 98104

          Attorneys for Defendant


1 - OPINION AND ORDER

MARSH, Judge

Plaintiff David Olsen seeks judicial review of the final decision of the Commissioner of Social Security denying his application for Supplemental Security Income ("SSI") disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons that follow, I affirm the Commissioner's final decision.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff protectively filed his application on March 28, 2012, alleging disability beginning March 1, 1991, due to a learning disability and high blood pressure. Plaintiff's application was denied initially and upon reconsideration. Plaintiff filed a request for a hearing before an administrative law judge ("ALJ"). The ALJ held a hearing on January 10, 2014, at which Plaintiff appeared with his attorney and testified. A vocational expert ("VE"), Erin Martz, also appeared and testified. On January 23, 2014, the ALJ issued an unfavorable decision. The Appeals Council denied Plaintiff's request for review, and therefore, the ALJ's decision became the final decision of the Commissioner.

Born in 1965, Plaintiff was 46 years old on the date his SSI application was filed. Plaintiff has a high school education with a modified diploma attained by taking special education classes. Plaintiff has worked in the past as a newspaper carrier on a part-time basis. Tr. 42.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. *Molina*

*v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); *Valentine v. Commissioner Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). At step five, the burden shifts to the Commissioner to show that the claimant can do other work that exists in the national economy. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since March 28, 2012, the application date. At step two, the ALJ found that Plaintiff had the following severe impairments: borderline intellectual functioning and adjustment disorder with mixed anxiety and depression. At step three, the ALJ found that Plaintiff's impairment or combination of impairments, did not meet or medically equal a listed impairment.

The ALJ assessed Plaintiff with a residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following nonexertional limitations:

> he is limited to simple routine and repetitive tasks consistent with unskilled work; is limited to low stress work, which is defined as work requiring few decisions and few changes; should have no contact with the public; is limited to occasional superficial contact with coworkers; is capable of performing at a standard or ordinary pace but not at a strict production rate pace; work tasks should be capable of demonstration through one-on-one, hands on instruction rather than a written instruction.

Transcript of Record ("Tr.") at 13, ECF No. 11.

At step four, the ALJ found that Plaintiff has no past relevant work. At step five, the ALJ concluded that considering Plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that Plaintiff can perform, such as salvage laborer, cleaner, and drier attendant. Accordingly, the ALJ concluded that Plaintiff has not been under a disability under the Social Security Act since March 28, 2012, his SSI application date.

## ISSUES ON REVIEW

Plaintiff contends that the ALJ erroneously discredited his testimony, improperly evaluated the opinions of David Wigutoff, Ph.D., and Wendy Morseth, Psy.D., and failed to develop the record concerning his mental limitations. The Commissioner responds that the ALJ did not err, or alternatively, that Plaintiff has not demonstrated harmful error.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied the proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill*, 698 F.3d at 1159 (internal quotations omitted); *Valentine*, 574 F.3d at 690. The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Batson v. Commissioner Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001); *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

## DISCUSSION

I.    **The ALJ Did Not Err in Evaluating the Medical Evidence**

    *A.    Standards*

In general, the opinion of a treating physician is given more weight than the opinion of an examining physician, and the opinion of an examining physician is afforded more weight than the opinion of a nonexamining physician. *Ghanim v. Colvin,* 763 F.3d 1154, 1160 (9th Cir. 2014); *Garrison,*759 F.3d at 1012; *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). "If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." *Orn,* 495 F.3d at 631 (internal quotations omitted) (alterations in original); 20 C.F.R. § 416.927(c). To reject the uncontradicted opinion of a treating physician, the ALJ must provide "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

If the treating physician's opinion is contradicted, the ALJ must consider how much weight it is entitled to considering the factors in 20 C.F.R. § 416.927(c)(2-6). The factors include the length of the treatment relationship, the frequency of examination, the nature and supportability of the opinion, and its consistency with other evidence in the record as a whole. 20 C.F.R. § 416.927(d)(2-6); *Ghanim,* 763 F.3d at 1161. If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. *Id.* However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

B.    *Dr. Wigutoff*

Plaintiff argues that the ALJ erroneously evaluated Dr. Wigutoff's opinion. Dr. Wigutoff conducted a comprehensive Psychodiagnostic Evaluation of Plaintiff on June 14, 2012. Dr.

Wigutoff reviewed Plaintiff's previous psychodiagnostic evaluation completed by Dr. Morseth in 1991, interviewed Plaintiff, and conducted a mental status examination.  As part of the interview, Plaintiff disclosed that he has two felony convictions and is required to attend a weekly group therapy session for sexual offenders, in addition to meeting with his parole officer once a week. Tr. 278.

Dr. Wigutoff noted that Plaintiff rode the bus to the appointment, and that he appropriately telephoned to indicate there was a delay due to a traffic accident. Dr. Wigutoff observed that Plaintiff was appropriately dressed, was clean and well groomed, and made good eye contact.  Dr. Wigutoff noted Plaintiff's answers were simple, concrete, and lacking in insight.  Dr. Wigutoff described Plaintiff as fully oriented, was one year off on his age, and could repeat four digits in order, but not five.  Dr. Wigutoff observed that Plaintiff made a few mistakes repeating sentences verbatim, and could count backwards from 100 by sevens, but very slowly.  Dr. Wigutoff indicated that on a recall task, Plaintiff could remember four words and repeated them slowly, and later could recall three words, but did not recognize the fourth.  Dr. Wigutoff noted that Plaintiff was able to do simple arithmetic, that his answers to verbal analogies were good, and that his answers to practical judgment were mixed.

Dr. Wigutoff summarized the examination as follows:

> [Plaintiff] showed weakness in attention and memory for new information.  In performing a mentally challenging task, . . . he was accurate but functioned very slowly.  On the other hand his answers on abstract reasoning questions were good and his answers to practical judgment were mixed.  His pattern of performance on the mental status questioning suggest that he is capable of learning but does so very slowly, that over the years he has acquired useful knowledge, and that he would remain challenged in situations requiring responses to tasks or interactions requiring on the spot reasoning. This is consistent with borderline mental abilities as previously assessed.

[Plaintiff's] answers to questions about his life were concrete and lacking in insight. His functioning throughout his life has been marginal. His work experiences have had low mental demands. He delivered newspapers, which requires doing the same thing daily. He worked in the kitchen in prison, a sheltered environment. . . . His adult functioning in life has been consistent with borderline cognitive abilities. [Plaintiff] continues to qualify for a diagnosis of borderline intellectual functioning.

[Plaintiff] reported that in the past he managed his own SSI funds. He stated that he was consistently able to pay a mortgage and buy necessities. [Plaintiff] appears able to manage his own finances.

Tr. 279-80. Dr. Wigutoff diagnosed Plaintiff with Borderline Intellectual Functioning and assigned a GAF of 45.

In the decision, the ALJ accurately discussed Dr. Wigutoff's examination and accorded his opinion "significant weight." Tr. 15. Additionally, the ALJ incorporated numerous limitations identified by Dr. Wigutoff into the RFC, including limiting Plaintiff to simple, routine and repetitive tasks, unskilled work, low stress work requiring few decisions and changes, no contact with the public, occasional superficial contact with co-workers, no strict production rate pace work, work tasks that can be demonstrated one-on-one without the need for written instruction. Tr. 13, 15.

Plaintiff argues that the ALJ erred by failing to discuss Dr. Wigutoff's GAF score of 45, which indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Diagnostic & Statistical Manual of Mental Disorders* (DSM–IV–TR) at 32 (4th ed. 2000). I disagree.

As the Commissioner correctly highlights, the GAF scale recently was eliminated from the fifth edition of the *Diagnostic & Statistical Manual of Mental Disorders* ("DSM-V") 16 (5th ed. 2013). The DSM-V no longer recommends using GAF scores to measure mental health disorders

because of their "conceptual lack of clarity . . . and questionable psychometrics in routine practice." *Id.* To be sure, the Social Security Administration has not endorsed the GAF scale for use in the Social Security and SSI disability programs, and has indicated that GAF scores have no "direct correlation to the severity requirements in the mental disorders listings." *See* Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed.Reg. § 50746–01 (Aug. 21, 2000); *See McFarland v. Astrue*, 288 Fed. App'x 357, 359 (9th Cir. 2008) (noting that GAF scores do not have a direct correlation to the severity requirements in mental disorders listings).

Thus, although mental health practitioners may use GAF scores to track the clinical progress of an individual, they are not dispositive with respect to disability. *De Los Reyes v. Comm'r Soc. Sec. Admin.*, No. 1:12-cv-02048-AC, 2014 WL 61320, *13 (D. Or. Jan. 7, 2014); *Thomas v. Astrue*, No. CV 07-8040-PLA, 2009 WL 151488, *6 (C.D. Cal. Jan. 21, 2009). The ALJ is required to consider a treating physician's notes in context of the overall diagnosis given. *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001). The ALJ need not discuss all of the evidence presented in the treatment record, but must "explain why significant probative evidence has been rejected." *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir.1984) (internal quotation omitted); *see also Garrison*, 759 F.3d at 1002 n.4 (noting that "GAF scores, standing alone, do not control determinations of whether a person's mental impairments rise to the level of a disability" but, "they may be a useful measurement"). Therefore, an ALJ's failure to mention a GAF score does not render the assessment of a claimant's RFC deficient. *See Florence v. Astrue*, No. EDCV 08-0883-RC, 2009 WL 1916397, *6 (C.D. Cal. July 1, 2009) ("[W]ithout more, the ALJ's assessment of the medical record is not deficient solely because it does not reference a particular GAF score.").

8 - OPINION AND ORDER

I conclude that in the context of this case, the ALJ's failure to discuss Dr. Wigutoff's GAF score is not erroneous. Here, Dr. Wigutoff's GAF score is the *only* GAF score in the record, and without other GAF scores by which to compare, it is impossible to know whether the score noted by Dr. Wigutoff is consistent with Plaintiff's longitudinal functioning. To be sure, the record is devoid of any ongoing mental health treatment, counseling or therapy of any kind. Furthermore, a GAF score of 45, while it may indicate serious symptoms, it also may indicate a serious impairment in social, occupational or *school* functioning. As noted above, the ALJ thoroughly discussed Dr. Wigutoff's evaluation and incorporated many of the limitations therein described into the RFC. The ALJ's assessment is wholly supported by the record. Therefore, I cannot conclude that in light of the record as a whole, that the ALJ's failure to specifically discuss Dr. Wigutoff's GAF score was erroneous.

Similarly, I am not convinced that the ALJ failed to adequately incorporate other portions of Dr. Wigutoff's opinion into the RFC. Plaintiff insists that the ALJ rejected Dr. Wigutoff's findings that Plaintiff has marginal functioning, is capable of working only in a sheltered environment, and would be challenged in "situations requiring responses to tasks or interactions involving on the spot reasoning." Tr. 278. Plaintiff's arguments miss the mark.

Plaintiff insists that Dr. Wigutoff endorsed and adopted the 1991 opinion of Dr. Morseth that Plaintiff was capable of working only in a structured, sheltered environment. Having carefully reviewed Dr. Wigutoff's opinion, it is clear that Plaintiff misconstrues Dr. Wigutoff's opinion. To be sure, in Dr. Wigutoff's evaluation, he indicated that he reviewed Dr. Morseth's 1991 psycho-diagnositic evaluation. Tr. 277. In doing so, Dr. Wigutoff noted Dr. Morseth's primary findings – that Plaintiff's full scale IQ was 75, his reading was at the fifth grade level, his spelling was at third

grade level, and he performs arithmetic at sixth grade level. Tr. 277. Dr. Wigutoff also indicated that Dr. Morseth concluded that Plaintiff could only work in a structured, sheltered work environment. Tr. 277. In his briefing to this court, Plaintiff argues that Dr. Wigutoff, "rather than disputing such findings he indicated *nothing but assent*," and that by assigning a GAF of 45 "*assented* to the conclusions of Dr. Morseth." Pl. Opening Br. at 8-9 (emphasis added), ECF No. 18. Plaintiff's argument is without merit.

Aside from the brief summary of Dr. Morseth's prior evaluation discussed above, nowhere in Dr. Wigutoff's evaluation does he mention Dr. Morseth, Dr. Morseth's conclusions, or Morseth's examination findings. Instead, Dr. Wigutoff conducted his own mental status examination, stated his findings, and summarized his own conclusions – quoted in their entirety above. I am confident that had Dr. Wigutoff intended to adopt, endorse, or "assent" to Dr. Morseth's conclusions, he would have done so explicitly, not silently as Plaintiff intimates. In short, the ALJ's evaluation of Dr. Wigutoff's opinion is backed by substantial evidence and free of legal error.

Additionally, the ALJ accurately discussed the medical records from Plaintiff's time in prison. As the ALJ noted, while in prison, Plaintiff was diagnosed with an adjustment disorder, with mixed anxiety and depression. Tr. 14. As the ALJ noted, Plaintiff received no ongoing treatment or medication for his adjustment disorder while he was incarcerated. Tr. 14-15. Additionally, as the ALJ correctly indicated, Plaintiff testified at the hearing that he receives no ongoing therapy and takes no medication for depression, anxiety or his adjustment disorder since being released from prison. Tr. 14, 37. Based on the lack of supporting objective medical evidence, the ALJ concluded that plaintiff's adjustment disorder with mixed anxiety and depression is well-controlled. The ALJ's

10 - OPINION AND ORDER

findings are a reasonable interpretation of the evidence in the record and will not be disturbed. *Molina,* 674 F.3d at 1111.

C.    *Dr. Morseth*

Plaintiff erroneously contends that Dr. Wigutoff adopted Dr. Morseth's opinion that Plaintiff required a sheltered working environment, and therefore the ALJ was required to provide clear and convincing reasons to discount Dr. Morseth's opinion. As noted above, Plaintiff's contention is not supported by record. Dr. Morseth's opinion was contradicted by Dr. Wigutoff as well as reviewing agency physicians Michael J. Dennis, Ph.D., and Paul Rethinger, Ph.D., and consequently, the ALJ was required to provide specific and legitimate reasons for discounting Dr. Morseth's opinion. Tr. 117-20, 128-31. I conclude the ALJ's reasoning readily meets this standard.

Dr. Morseth conducted a comprehensive psycho-diagnostic evaluation of Plaintiff in November 1991 in connection with Plaintiff's previous SSI disability award. Tr. 72-74. Dr. Morseth conducted a battery of tests, including the Wechsler Adult Intelligence Scale - Revised; Wide Range Achievement Test, Level 2; Logical Memory from the Wechsler Memory Scale - Revised; Trailmarking Test; Auditory Verbal Learning Test; Beck Depression Inventory; and Incomplete Sentences Blank. Tr. 72. Dr. Morseth determined Plaintiff's Full Scale IQ is 75, that his strengths are visual memory and distinguishing essential from non-essential details, and that he has deficits in attention and concentration, and immediate memory. Tr. 73. Dr. Morseth indicated that Plaintiff is moderately depressed with learned helplessness. Tr. 73. Dr. Morseth diagnosed dysthymia and borderline intellectual functioning and opined that Plaintiff may be:

> employable in a structured, concrete unambiguous situation in which expectations and tasks are communicated to him clearly and simply.  He has not been able to find a job on his own and would benefit from a job skills training.  He is most

comfortable in a rural environment and lacks the social skills to perform well in a job which requires much in interpersonal interaction.

Because he has difficulty anticipating consequences and organizing, planning and structuring, he will need assistance with finding a place to live and financial management. He denies ever having a checking account, he has never paid bills except for his car insurance and has never paid taxes. He would need assistance with these things as well as managing an apartment.

Without assistance, it is quite likely that he will continue to live as he is now and become more asocial and isolated. He is at some risk for increased depression and suicide ideation and possible suicide attempt. I would recommend that he become involved in job skills training program followed by structured employment and that he be helped in finding a more suitable living situation.

Tr. 74.

The ALJ reviewed Dr. Morseth's evaluation and gave it little weight. The ALJ noted Dr. Morseth's opinion was provided more than 20 years earlier, and discounted it on that basis. To be sure, Dr. Morseth diagnosed dysthemia and that Plaintiff was moderately depressed. These findings were contradicted by Dr. Wigutoff, as well as the prison medical records. Here, the ALJ reasonably credited the most recent medical information concerning Plaintiff's adjustment disorder with mixed anxiety and depression. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001) ("A treating physician's most recent medical reports are highly probative.")

Additionally, the ALJ discounted Dr. Morseth's opinion that Plaintiff required a sheltered work environment based on more recent information in the record demonstrating that Plaintiff successfully delivered newspapers for five years, had a "rig," maintained a mortgage, and paid bills. Tr. 15, 35. The ALJ acknowledged that Plaintiff has limitations due to his borderline intellectual functioning, but concluded that he is capable of simple, low stress work with limited interactions as

12 - OPINION AND ORDER

set forth in the RFC.  Accordingly, I conclude that the ALJ provided specific and legitimate reasons to discount Dr. Morseth's opinion that are supported by substantial evidence in the record.

## II.    The ALJ Did Not Err in Discounting Plaintiff's Credibility

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis.  20 C.F.R. § 416.929.  The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged.  *Molina,* 674 F.3d at 1112; *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).  At the second stage of the credibility analysis, absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms.  *Carmickle v. Commissioner Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony.  *Tommasetti*, 533 F.3d at 1039.  Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence.  *Ghanim*, 763 F.3d at 1163; *Tommasetti*, 533 F.3d at 1039.

At the hearing, Plaintiff testified that he lives in a tent in a barn on farm property and feeds the livestock in exchange for living there.  Plaintiff stated that he completed high school with a modified diploma. Tr. 37.  Plaintiff stated that his previous work as a part-time newspaper carrier ended when he went to prison in 2004. Tr. 27.  Plaintiff testified that he was in prison from 2004

to 2009, and returned to prison in 2009 and was paroled in 2012. Tr. 30-31. Plaintiff testified that

he looked for work when he was paroled, but did not then have a driver's license or car. Tr. 28.   At

the hearing, Plaintiff stated that he recently was able to get his driver's license. Tr. 29.  Plaintiff

stated that he cannot work because he might get argumentative with his boss, and he gets frustrated

easily. Tr. 30.

Plaintiff testified that while in prison, he worked in the prison kitchen as an orderly, and that

he swept floors, wiped tables, and passed out serving trays of food. Tr. 32.  Plaintiff stated when he

was not working in the kitchen, he stayed in his cell watching television, listening to the radio, or

sleeping. Tr. 33.  Plaintiff stated that he feeds and waters the cows daily on the farm, that he attends

weekly meetings with his parole officer, and that he is driven to those meetings by a friend.  Plaintiff

testified that he is depressed "sometimes" and that his depression is unchanged since his release from

prison. Plaintiff stated that he is depressed because of his living situation.  Tr. 35.  Plaintiff noted

that he receives food stamps, and goes grocery shopping with his friend, and has access to a propane

stove, refrigerator and microwave and can cook simple meals. Tr. 36.

Plaintiff stated that when he was in prison, he took blood pressure medication, but he no

longer takes that medication.  Plaintiffs stated that after high school, he received training through the

Job Corps to perform building maintenance, but he was unable to patch sheet rock correctly, or lay

tile correctly, and could not read a tape measure.  Plaintiff stated that his ability to function has

gotten a little bit worse. Tr. 38.

In a May 31, 2012 Adult Function Report, Plaintiff reported he has no problems with

personal care, and prepares food for himself daily, has no difficulties getting around, and is able to

walk, ride a bicycle, and use public transportation. Tr. 259-60.  Plaintiff stated that he is able to shop

14 - OPINION AND ORDER

and does so when he receives food stamps. Tr. 260. Plaintiff indicated that he is able to pay bills,

and uses money orders because he has trouble writing and spelling. Tr. 261. Plaintiff reported that

he has no trouble spending time with friends on the phone or in person, but does not get along well

with authority figures, has difficulty completing tasks, and does not handle stress well. Tr. 262-63.

Plaintiff stated that he does not take any medications for his symptoms. Tr. 263. Plaintiff indicated

that prior to his incarceration, he received SSI benefits and wants to try to get them back. Tr. 264.

In the decision, the ALJ found that Plaintiff's impairments could reasonably be expected to

cause some symptoms, but that his statements concerning the limiting effects were not entirely

credible. The ALJ cited two reasons for discounting Plaintiff's credibility: (1) lack of objective

medical evidence; and (2) inconsistency with his reported daily activities.

As the ALJ indicated, Plaintiff's objective medical records do not support the severity of his

symptoms. A determination that a claimant's subjective complaints are inconsistent with treatment

records is a valid credibility consideration, so long as it is not the sole reason for discounting a

claimant's credibility. *Tommasetti*, 533 F.3d at 1039; *Rollins v. Massinari*, 261 F.3d 853, 857 (9th

Cir. 2001) (inconsistency with medical evidence is a relevant consideration but cannot be the sole

ground to discount credibility). Plaintiff argues that the adverse credibility determination is flawed

in light of the ALJ's erroneous interpretation of Drs. Wigutoff and Morseth's opinions. As discussed

at length above, the ALJ did not err in evaluating the very limited medical evidence in the record,

and the lack of objective support in the medical record is an appropriate basis to find Plaintiff less

than fully credible.

Additionally, the ALJ discounted Plaintiff's credibility because he has not received treatment

for his allegedly disabling mental impairments. Here, the ALJ discussed that Plaintiff's adjustment

disorder with mixed anxiety and depression appears well-controlled. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding the severity of an impairment."). A lack of treatment can provide a basis for a negative credibility assessment. *See Carmickle*, 533 F.3d at 1161 ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.").

Plaintiff complains that the ALJ erred by failing identify which specific prison record undermines his credibility. I disagree. The ALJ examined the prison medical records and discussed them thoroughly, specifically referencing a mental health evaluation by Karen Hernandez, Ph.D., conducted on June 8, 2009. Tr. 14-15, 302-04. As the ALJ accurately stated, Plaintiff was diagnosed while incarcerated with an adjustment disorder with mixed anxiety and depressive traits while in prison, but he was not placed on any medication, nor was any follow up counseling recommended. Tr. 303. The ALJ discussed that Plaintiff worked while incarcerated in the prison kitchen as an orderly, which included pushing a broom, wiping tables and serving food. Tr. 14, 31-33. At the hearing, Plaintiff testified that as an orderly he "found something to do" to keep busy and denied any disciplinary problems. Tr. 31-33. The ALJ found the evidence does not support the degree of severity of Plaintiff's allegations of difficulty learning and handling frustration. The ALJ must review Plaintiff's treatment notes in light of overall diagnostic picture. *Ghanim*, 763 F.3d at 1163; *Garrison*, 759 F.3d at 1017. Plaintiff has reported symptoms of mild depression and anxiety and was diagnosed with an adjustment disorder, but has never been prescribed medication or received any ongoing treatment. Examining the record as a whole, I conclude that the longitudinal picture of Plaintiff's mental health supports the ALJ's finding that the severity of Plaintiff's subjective symptoms is inconsistent with the clinical evidence and his adjustment disorder is well-

16 - OPINION AND ORDER

controlled. Even if the objective medical evidence could support Plaintiff's interpretation, the ALJ's

determination is reasonable and must be upheld. *Batson*, 359 F.3d at 1193.

The ALJ also discounted Plaintiff's credibility because the severity of his symptoms is

inconsistent with his daily activities.    Contradiction with a claimant's activities of daily living is a

clear and convincing reason for rejecting a claimant's testimony. *Tommasetti*, 533 F.3d at 1039.

Engaging in daily activities that are incompatible with the severity of symptoms alleged can support

an adverse credibility determination. *Molina*, 674 F.3d at 1112.  The ALJ discussed that Plaintiff

prepares his own meals, feeds livestock and performs other farm chores, obtained his driver's

license, and uses public transportation.  Plaintiff contends that the ALJ erroneously relied upon his

activities of daily living to discount his credibility because the ALJ did not determine that his

activities are transferable to a work place or take a substantial portion of Plaintiff's day.  I disagree.

Although the farm chores do not take a substantial part of his day, as the ALJ found, Plaintiff

testified that other factors impede his ability to sustain work full time, not his mental impairments.

As the ALJ detailed, Plaintiff looked for work after being paroled, finding that this suggests Plaintiff

"feels capable of doing some types of work activity." Tr. 16; *Bray v. Comm'r of Soc. Sec. Admin.*,

554 F.3d 1219, 1227 (9th Cir. 2009) (seeking employment after the onset of disability is a legitimate

basis upon which to discount a claimant's crediblity).  Additionally, the ALJ noted Plaintiff's

inconsistent testimony that his primary barrier to working is his lack of transportation options, with

costly, sporadic public transportation, and the fact that he no longer owns a car.  Tr. 16, 28.  And,

the ALJ discussed Plaintiff's hearing testimony that he is unable to return to work as a newspaper

carrier because of his felony record, not his mental impairments. Contrary to Plaintiff's suggestion,

the ALJ did not discount Plaintiff's credibility simply because of his felony convictions, but instead

17 - OPINION AND ORDER

discounted his testimony because Plaintiff attributed his inability to work to his living situation, not his alleged disability. Tr. 16. These inconsistencies are wholly supported by substantial evidence in the record, and provide specific, clear reasons to discount Plaintiff's credibility. I conclude that when the ALJ's first and second reasons are combined, they provide clear and convincing support for the ALJ's adverse credibility determination. *Molina*, 674 F.3d at 1113 (finding claimant's daily activities and inconsistency with medical evidence supported adverse credibility determination).

The ALJ thoroughly examined the conflicting evidence and made findings based on observations, citing specific record evidence. As the ALJ concluded, Plaintiff's adjustment disorder appears well controlled, and he has some limitations based on his borderline intellectual functioning, and the nuances of Plaintiff's allegations are reflected in the ALJ's carefully crafted RFC. *Molina*, 674 F.3d at 1113 ("Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."). In short, the court concludes that while the record may be susceptible to more than one rational interpretation, the ALJ's decision is supported by substantial evidence, and thus the court may not engage in second-guessing. *See Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995) (explaining that the ALJ "is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. . . . [Therefore the Court] must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.").

## III.   ALJ's Duty to Develop the Record Not Triggered

Lastly, Plaintiff argues the ALJ should have made an effort to develop the record further with respect to his alleged mental impairments. An ALJ has a duty "to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144,

18 - OPINION AND ORDER

1150 (9th Cir. 2001) (internal quotations omitted). However, the ALJ's duty to develop the record is triggered only where the record contains "[a]mbiguous evidence" or the ALJ has found "the record is inadequate to allow for proper evaluation of the evidence." *Id.*; *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). Plaintiff was represented at the hearing, and the record was neither inadequate or ambiguous to allow for a proper evaluation of the evidence. Thus, Plaintiff's argument is rejected.

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision denying benefits to Plaintiff is AFFIRMED.

IT IS SO ORDERED.

DATED this *12* day of SEPTEMBER, 2016.

Malcolm F. Marsh
United States District Judge

19 - OPINION AND ORDER